# __JOINT EXHIBIT #4__



```
 1                    STATE OF MICHIGAN
        IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2      - - - - - - - - - - - - - - - - - -
        PEOPLE OF THE STATE OF MICHIGAN,)
 3                                      )File No. 15-175-FH
              -vs-                      )JUDGE AQUILINA
 4                                      )
        BRIAN MICHAEL ALEXANDER,        )
 5                                      )
                    Defendant.          )
 6      - - - - - - - - - - - - - - - - -
                    MOTION FOR NEW TRIAL
 7      before the Honorable William E. Collette,
          Circuit Judge, Ingham County, Michigan
 8              Wednesday, August 16, 2017

 9      APPEARANCES:

10        CHRISTINA E. JOHNSON (P76893)
          AYLYSH B. GALLAGHER (P77510)
11        303 West Kalamazoo Street
          Lansing, MI  48933-2021
12        (517) 483-6108

13              On behalf of the People.

14        SCOTT GRABEL (P53310)
          124 West Allegan Street, Suite 636
15        Lansing, MI  48933-1707
          (800) 342-7896
16
                Co-Counsel on behalf of the Defendant.
17
          TIMOTHY A. DOMAN (P77811)
18        23169 Michigan Avenue
          P.O. Box 2723
19        Dearborn, MI  48123-4001

20              Co-Counsel on behalf of the Defendant.

21

22

23

24

25

                            1
```

Joint Exhibit 004



```
 1                        EXAMINATION INDEX
   -----------------------------------------------------------
 2    WITNESSES                                        PAGE
   -----------------------------------------------------------
 3
      NONE
 4
                   *               *               *
 5

 6

 7

 8

 9

10

11

12

13

14

15                        EXHIBIT INDEX
   -----------------------------------------------------------
16    EXHIBIT                          OFFERED      ADMITTED
   -----------------------------------------------------------
17
      NONE
18
                   *               *               *
19

20

21

22

23

24

25

                                2
```

Joint Exhibit 005

| | |
|---|---|
| 1       Mason, Michigan | 1   would expect, for appellate review, so I won't make any |
| 2       August 16, 2017 | 2   further record on those, but just preserved for |
| 3       3:16 p.m. | 3   appellate review upon those arguments. |
| 4       R E C O R D | 4       The text message, Your Honor -- I am not going to |
| 5       THE COURT: People versus Brian Michael | 5   regurgitate the evidence. This Court presided over the trial. |
| 6   Alexander. Where are my notes? Kacie, what happened to | 6   This Court is more than familiar on what the evidence was in |
| 7   my notes? My yellow sheet of paper that I had, | 7   this particular case. |
| 8   remember? Is it in here somewhere? | 8       One thing I want to bring Your Honor -- and I think |
| 9       As I understand -- docket 15-175-FH -- this matter | 9   that it's important to apologize for speaking out of turn, and |
| 10   has been remanded from the Supreme Court on only one issue. | 10   I am not going to try to add dramatics. I was approached |
| 11   And they have found that I was -- strangely enough, that I was | 11   about 10 minutes ago from the Prosecutor, Ms. Maquise, and the |
| 12   actually right on three parts of the test, but apparently | 12   assistant -- |
| 13   because I didn't say the magic words, the court of appeals | 13       THE COURT: Ms. Maquise is not here. That's |
| 14   have reversed me because I am not a magic person, and then the | 14   Ms. Johnson. |
| 15   Supreme Court, in their wisdom, has decided that only this one | 15       MR. GRABEL: Ms. Johnson is here now, but just |
| 16   last question is to be decided, is that correct? | 16   for the record for clarity she indicated to me that the |
| 17       MR. GRABEL: I apologize, Your Honor. May it | 17   alleged victim in the case or victim as you want to |
| 18   please the Court, attorney Scott Grabel. And I have | 18   construe it, had -- now has some things that she wants |
| 19   Mr. Alexander, who is here to my left standing, also | 19   to clear up during her trial testimony. And she tried |
| 20   co-counsel, attorney Timothy Doman. | 20   to -- this happened today in real time, and she wanted |
| 21       THE COURT: Is that your understanding, sir? | 21   to do that. It may not be pertinent today, but I |
| 22       MR. GRABEL: No. Your Honor, it's partially | 22   felt -- I wasn't sure what to do with that, so I wanted |
| 23   correct. I believe the Court is not limited in review | 23   to bring it to the Court's attention. |
| 24   to just the issue on Cress. I believe the Court has | 24       THE COURT: I have no idea. Look, look, |
| 25   jurisdiction to address the original issues that we | 25   discussions in the hallway, discussions about this and |
| 3 | 5 |
| 1   filed in the motion -- on the motion for new trial | 1   about that, are not part of my record, Mr. Grabel. Will |
| 2   considering other theories of a new trial that are, | 2   you please just make a short commentary on how you feel |
| 3   frankly, a lower standard then People versus Cress. I | 3   I should address this? I don't -- I am not interested |
| 4   believe we can meet the burden of Cress, but for | 4   in what people may say in the hall or not say in the |
| 5   appellate purposes, Your Honor, in the brief we did give | 5   hall, all right? That's not part of the Court. When |
| 6   several other statutes and court rules that -- as well | 6   you have out of -- off the record discussions, they are |
| 7   as case law that the Court has a monopoly of other | 7   supposed to be off the record and the parties are free |
| 8   rationales to grant a new trial. That they are not | 8   to say things that they might not otherwise say. So |
| 9   limited to Cress. And I've also included language from | 9   please address what I've got here. |
| 10   the Supreme Court. When they do lend a review they | 10       MR. GRABEL: I certainly will, Your Honor. |
| 11   use -- I'll stop. Thank you. | 11   Thank you again. |
| 12       THE COURT: Here is what I'm telling you, all | 12       This particular evidence on the text messages, it |
| 13   right? My opinion is, is that I am here on one issue to | 13   was important enough that the Prosecutor made it an important |
| 14   be decided. I am not going to muck this case up anymore | 14   focal point of the closing argument. It served a twofold |
| 15   than it has been. | 15   purpose. It bolstered testimony of Ms. Bostwick, obviously, |
| 16       Ms. Johnson, do you have something else other than | 16   on indicating that she gave an excuse for not -- for being |
| 17   what I believe is that the evidence should make a different | 17   home sick from school, and it excused it by saying I texted my |
| 18   result probable? | 18   mom. It was used also to impeach the mother who was a key |
| 19       MS. JOHNSON: That -- I believe that is the | 19   character witness in our case, but in essence, calling her a |
| 20   only question we are here to determine. | 20   liar. And they want to tell you this is not an important |
| 21       THE COURT: If you have all these other | 21   piece of evidence. I would say to you if the evidence wasn't |
| 22   theories, that's wonderful, but I don't think I ruled on | 22   important, why was it specifically brought out in the closing |
| 23   any of those, Counsel, so make your argument, please. | 23   argument. And it was hit pretty hard to bolster the |
| 24       MR. GRABEL: Well, Your Honor, I, first of | 24   credibility of Ms. Bostwick and neutralize the credibility of |
| 25   all, incorporate all the arguments in the brief, as you | 25   Stefani Alexander, a key witness in this particular case. I |
| 4 | 6 |

**Joint Exhibit 006**

1  could see the Court is nodding to me. I knew the Court read
2  the briefs. I could regurgitate the brief. I am not going
3  to.
4       CSC cases, as this Court knows, credibility is the
5  key. And anything that affects the credibility or even if
6  it's one instance, if the alleged victim would have recanted
7  the last instance, well, say I made that up, but you got
8  nothing on me on the other three, you didn't touch me, the
9  Court will say that's probably enough to push all the dominos
10 over and sink her.
11      This is a witness who came into this proceeding who
12 said under oath in this court, I was going to lie under oath
13 about something nonmaterial. She got caught on that. You
14 would say it's nonmaterial. The Supreme Court said that's
15 still perjury. That's a felony. She got one free pass. The
16 Prosecutor didn't charge her on it. It's a felony. No
17 question about it. Doesn't have to be material. She doesn't
18 deserve a second free pass. In this case, anything --
19      THE COURT: Wait. You are saying that a
20 perjured statement that's not material is actionable?
21      MR. GRABEL: Yes. Absolutely.
22      THE COURT: Okay. Go ahead.
23      MR. GRABEL: According to the Michigan --
24      THE COURT: What does that -- look. Just get
25 down to your points, please.

7

1  of course, rely on our briefs, but I do want to respond
2  to two things that Mr. Grabel said.
3       The first is that he indicates that Mr. Kwasnik made
4  a large portion of his closing argument about these text
5  messages. Reading of the transcript is that's simply not
6  true. This was over 24 to 25 pages of transcript of the
7  closing argument and seven to eight pages of a rebuttal
8  closing argument. We're talking about approximately one page
9  where there is any discussion of these text messages. And his
10 bottom line argument is that what Madison said occurred is
11 more reasonable than what her mother said occurred that was
12 not reasonable. That was not a large feature of his closing
13 argument. These text messages were not something that the
14 Prosecution relied on heavily in the trial.
15      With regards to the conversation with the
16 ex-boyfriend about the potential perjury, it's my argument
17 that that is significantly more damaging to a victim's
18 credibility and significantly more relevant to a jury's
19 determination of credibility than these text messages were.
20 And so this jury heard the most damaging evidence they could
21 have heard about this victim's credibility, and they still
22 chose to believe her, whereas these text messages are, as the
23 court of appeals had said, they -- they don't contradict her.
24 They just make clear something that she was unclear about.
25      So for those reasons I'd ask the Court to find that

9

1       MR. GRABEL: Her credibility was already on
2  life support. She got one free pass. This could have
3  tipped the scale of credibility in this case certainly,
4  and obviously, we believe that this was intentionally
5  concealed in my opinion or it was grossly negligent not
6  to do due diligence and give us this material. It would
7  have affected the outcome in this case. It's a CSC
8  case. There was no forensic evidence here. There was
9  no admissions. There was a one-on-one credibility
10 contest, and as this Court has heard the language many
11 times, anything could tip the scale on credibility. And
12 in this case it would have tipped the scale on
13 credibility and the outcome would have been different.
14      I rely on the rest of the brief as you told me last
15 time. Time to shut up and sit down.
16      THE COURT: Thank you very much, Mr. Grabel.
17 You have learned finally, haven't you?
18      MR. GRABEL: Judge, I always learn from your
19 wisdom. Thank you.
20      THE COURT: Ma'am, Ms. Johnson, I know you
21 weren't here, but please make your comments, ma'am.
22      MS. JOHNSON: I'm sorry?
23      THE COURT: Please make your comment.
24      MS. JOHNSON: Thank you, Your Honor. I will
25 be brief in my comments. I do just want to, you know,

8

1  while a different outcome may have been possible, it is not
2  probable.
3       THE COURT: All right. Well, honestly
4  speaking, as you may recall, for the first time in my
5  entire career I ordered a new trial in this case. It's
6  nothing that I have ever even done before. I didn't
7  even really know how to do it apparently according to
8  our illustrious court of appeals, who wants us to put
9  everything on the head of a pin and make sure it fits in
10 all these little places.
11      Here is what I can tell you right now is that this
12 was a one-on-one case as he pointed out. One-on-one where the
13 credibility of the victim was clearly in controversy. The
14 credibility of this gentleman here was. The credibility of
15 his wife on his behalf was.
16      And I think that what I saw here, first of all, I
17 saw a police officer, where I should have probably ordered a
18 new trial, when she turned to the jury in the course of this
19 case and told the jury while I am talking to the lawyers,
20 well, I know he is guilty. That's not doing justice in our
21 society. When you have police officers who materially adopt
22 their roles, then it's time for them to be doing some other
23 job at the police department. But to sit there and say that
24 on a case like this where it's really a one-on-one kind of
25 thing absolutely amazed me. And I guess I was, you know --

10

**Joint Exhibit 007**

**Page 11**

1 frankly, maybe I should have done something different then,
2 but I didn't. I just told the jury, don't listen to that, and
3 that's not relevant, but it really demonstrated to me the
4 lengths that people will sometimes go to justify their
5 positions, particularly when I had this motion for new trial.
6 This information came to light to this officer after
7 the preliminary hearing where she was obviously, in my view,
8 looking for something to buttress the testimony of the victim.
9 And if she could demonstrate where this girl went home sick
10 after texting with her mother, it would certainly make it look
11 a lot better because the records did not show this girl having
12 any absences whatsoever when she claimed that this happened
13 while she was home, while she was home sick when she didn't --
14 or either didn't go to school or came home. And the mother
15 even got up and says, this never happened. So those records
16 would have been material, and these were not disclosed to the
17 Defense. That's why I ordered a new trial. And I think that
18 where you have a one-on-one -- now, if there were 40 other
19 witnesses that saw this, or three people -- I had a case
20 recently where they actually tape-recorded the crime. That
21 was awful. Yeah. I know. Ms. Johnson, were you on that?
22 MS. JOHNSON: I was.
23 THE COURT: Yes. So you know what I mean.
24 But here we got a one-on-one, and I really do think, it
25 is my opinion that this evidence is not cumulative. It

**Page 12**

1 is clearly on point and clearly there would have --
2 there would have been a probable -- probably different
3 result on retry on this case if that evidence had come
4 to light and the witness could have been examined on it.
5 So I do find, as the Supreme Court has ordered me to,
6 that I found that, and I order a new trial. Prepare an
7 order.
8 MR. GRABEL: I did, Your Honor. I have a
9 copy.
10 THE COURT: What? You thought -- how did you
11 know which way I was going to rule?
12 MR. GRABEL: I didn't, Your Honor. I prepared
13 alternatives.
14 THE COURT: Ms. Johnson does all the time,
15 too. Show her.
16 MR. GRABEL: I will, Your Honor. And I
17 certainly won't be presumptuous.
18 THE COURT: I got to tell you, I'll be happy
19 to retry this.
20 Did you have to bring your assistant again?
21 MS. GALLAGHER: No.
22 MR. GRABEL: May I approach, Your Honor.
23 THE COURT: Yes.
24 MR. GRABEL: Thank you.
25 THE COURT: All right.

**Page 13**

1 (Whereupon, Motion for New Trial concluded at 3:29 p.m.)

**Page 14**

STATE OF MICHIGAN )
                   )ss
COUNTY OF INGHAM )

I, Paul G. Brandell, Certified Shorthand Reporter, do hereby certify that the foregoing Motion for New Trial was taken before me at the time and place hereinbefore set forth.

I further certify that the foregoing is a full, true, and correct transcript of the statements taken on August 16, 2017.

9-4-18     Paul G. Brandell, CSR-4552
           Certified Shorthand Reporter,
           Registered Professional Reporter

**Joint Exhibit 008**