## UNITED STATES OF AMERICA

## WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

Brian Alexander,  
    Plaintiff

File No: 1:18-cv-930

v.

Steven J. Kwasnik and  
Annie Harrison,  
    Defendants.

Hon. Janet T. Neff  
U.S. District Court Judge

_____/

## PLAINTIFF'S MOTION RESPONSES CONSOLIDATED EXHIBITS

Exhibit 23 – August 16, 2017 motion for new trial (after remand) transcript



```
                    STATE OF MICHIGAN
        IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM
        - - - - - - - - - - - - - - - - - -
        PEOPLE OF THE STATE OF MICHIGAN,)
                                        )File No. 15-175-FH
        -vs-                            )JUDGE AQUILINA
                                        )
        BRIAN MICHAEL ALEXANDER,        )
                                        )
                    Defendant.          )
        - - - - - - - - - - - - - - - - - -
                    MOTION FOR NEW TRIAL
        before the Honorable William E. Collette,
        Circuit Judge, Ingham County, Michigan
               Wednesday, August 16, 2017

        APPEARANCES:

            CHRISTINA E. JOHNSON (P76893)
            AYLYSH B. GALLAGHER (P77510)
            303 West Kalamazoo Street
            Lansing, MI  48933-2021
            (517) 483-6108

                    On behalf of the People.

            SCOTT GRABEL (P53310)
            124 West Allegan Street, Suite 636
            Lansing, MI  48933-1707
            (800) 342-7896

                    Co-Counsel on behalf of the Defendant.

            TIMOTHY A. DOMAN (P77811)
            23169 Michigan Avenue
            P.O. Box 2723
            Dearborn, MI  48123-4001

                    Co-Counsel on behalf of the Defendant.
```

```
 1                      EXAMINATION INDEX
   ------------------------------------------------------------
 2  WITNESSES                                          PAGE
   ------------------------------------------------------------
 3
    NONE
 4
                 *              *              *
 5
 6
 7
 8
 9
10
11
12
13
14
15                        EXHIBIT INDEX
   ------------------------------------------------------------
16  EXHIBIT                              OFFERED     ADMITTED
   ------------------------------------------------------------
17
    NONE
18
                 *              *              *
19
20
21
22
23
24
25
                                 2
```

                  Mason, Michigan
                  August 16, 2017
                  3:16 p.m.
                  RECORD
THE COURT: People versus Brian Michael Alexander. Where are my notes? Kacie, what happened to my notes? My yellow sheet of paper that I had, remember? Is it in here somewhere?

As I understand -- docket 15-175-FH -- this matter has been remanded from the Supreme Court on only one issue. And they have found that I was -- strangely enough, that I was actually right on three parts of the test, but apparently because I didn't say the magic words, the court of appeals have reversed me because I am not a magic person, and then the Supreme Court, in their wisdom, has decided that only this one last question is to be decided, is that correct?

MR. GRABEL: I apologize, Your Honor. May it please the Court, attorney Scott Grabel. And I have Mr. Alexander, who is here to my left standing, also co-counsel, attorney Timothy Doman.

THE COURT: Is that your understanding, sir?

MR. GRABEL: No. Your Honor, it's partially correct. I believe the Court is not limited in review to just the issue on Cress. I believe the Court has jurisdiction to address the original issues that we filed in the motion -- on the motion for new trial considering other theories of a new trial that are, frankly, a lower standard then People versus Cress. I believe we can meet the burden of Cress, but for appellate purposes, Your Honor, in the brief we did give several other statutes and court rules that -- as well as case law that the Court has a monopoly of other rationales to grant a new trial. That they are not limited to Cress. And I've also included language from the Supreme Court. When they do lend a review they use -- I'll stop. Thank you.

THE COURT: Here is what I'm telling you, all right? My opinion is, is that I am here on one issue to be decided. I am not going to muck this case up anymore than it has been.

Ms. Johnson, do you have something else other than what I believe is that the evidence should make a different result probable?

MS. JOHNSON: That -- I believe that is the only question we are here to determine.

THE COURT: If you have all these other theories, that's wonderful, but I don't think I ruled on any of those, Counsel, so make your argument, please.

MR. GRABEL: Well, Your Honor, I, first of all, incorporate all the arguments in the brief, as you would expect, for appellate review, so I won't make any further record on those, but just preserved for appellate review upon those arguments.

The text message, Your Honor -- I am not going to regurgitate the evidence. This Court presided over the trial. This Court is more than familiar on what the evidence was in this particular case.

One thing I want to bring Your Honor -- and I think that it's important to apologize for speaking out of turn, and I am not going to try to add dramatics. I was approached about 10 minutes ago from the Prosecutor, Ms. Maquise, and the assistant --

THE COURT: Ms. Maquise is not here. That's Ms. Johnson.

MR. GRABEL: Ms. Johnson is here now, but just for the record for clarity she indicated to me that the alleged victim in the case or victim as you want to construe it, had -- now has some things that she wants to clear up during her trial testimony. And she tried to -- this happened today in real time, and she wanted to do that. It may not be pertinent today, but I felt -- I wasn't sure what to do with that, so I wanted to bring it to the Court's attention.

THE COURT: I have no idea. Look, look, discussions in the hallway, discussions about this and about that, are not part of my record, Mr. Grabel. Will you please just make a short commentary on how you feel I should address this? I don't -- I am not interested in what people may say in the hall or not say in the hall, all right? That's not part of the Court. When you have out of -- off the record discussions, they are supposed to be off the record and the parties are free to say things that they might not otherwise say. So please address what I've got here.

MR. GRABEL: I certainly will, Your Honor. Thank you again.

This particular evidence on the text messages, it was important enough that the Prosecutor made it an important focal point of the closing argument. It served a twofold purpose. It bolstered testimony of Ms. Bostwick, obviously, on indicating that she gave an excuse for not -- for being home sick from school, and it excused it by saying I texted my mom. It was used also to impeach the mother who was a key character witness in our case, but in essence, calling her a liar. And they want to tell you this is not an important piece of evidence. I would say to you if the evidence wasn't important, why was it specifically brought out in the closing argument. And it was hit pretty hard to bolster the credibility of Ms. Bostwick and neutralize the credibility of Stefani Alexander, a key witness in this particular case. I

could see the Court is nodding to me. I knew the Court read the briefs. I could regurgitate the brief. I am not going to.

CSC cases, as this Court knows, credibility is the key. And anything that affects the credibility or even if it's one instance, if the alleged victim would have recanted the last instance, well, say I made that up, but you got nothing on me on the other three, you didn't touch me, the Court will say that's probably enough to push all the dominos over and sink her.

This is a witness who came into this proceeding who said under oath in this court, I was going to lie under oath about something nonmaterial. She got caught on that. You would say it's nonmaterial. The Supreme Court said that's still perjury. That's a felony. She got one free pass. The Prosecutor didn't charge her on it. It's a felony. No question about it. Doesn't have to be material. She doesn't deserve a second free pass. In this case, anything --

THE COURT: Wait. You are saying that a perjured statement that's not material is actionable?

MR. GRABEL: Yes. Absolutely.

THE COURT: Okay. Go ahead.

MR. GRABEL: According to the Michigan --

THE COURT: What does that -- look. Just get down to your points, please.

MR. GRABEL: Her credibility was already on life support. She got one free pass. This could have tipped the scale of credibility in this case certainly, and obviously, we believe that this was intentionally concealed in my opinion or it was grossly negligent not to do due diligence and give us this material. It would have affected the outcome in this case. It's a CSC case. There was no forensic evidence here. There was no admissions. There was a one-on-one credibility contest, and as this Court has heard the language many times, anything could tip the scale on credibility. And in this case it would have tipped the scale on credibility and the outcome would have been different.

I rely on the rest of the brief as you told me last time. Time to shut up and sit down.

THE COURT: Thank you very much, Mr. Grabel. You have learned finally, haven't you?

MR. GRABEL: Judge, I always learn from your wisdom. Thank you.

THE COURT: Ma'am, Ms. Johnson, I know you weren't here, but please make your comments, ma'am.

MS. JOHNSON: I'm sorry?

THE COURT: Please make your comment.

MS. JOHNSON: Thank you, Your Honor. I will be brief in my comments. I do just want to, you know, of course, rely on our briefs, but I do want to respond to two things that Mr. Grabel said.

The first is that he indicates that Mr. Kwasnik made a large portion of his closing argument about these text messages. Reading of the transcript is that's simply not true. This was over 24 to 25 pages of transcript of the closing argument and seven to eight pages of a rebuttal closing argument. We're talking about approximately one page where there is any discussion of these text messages. And his bottom line argument is that what Madison said occurred is more reasonable than what her mother said occurred that was not reasonable. That was not a large feature of his closing argument. These text messages were not something that the Prosecution relied on heavily in the trial.

With regards to the conversation with the ex-boyfriend about the potential perjury, it's my argument that that is significantly more damaging to a victim's credibility and significantly more relevant to a jury's determination of credibility than these text messages were. And so this jury heard the most damaging evidence they could have heard about this victim's credibility, and they still chose to believe her, whereas these text messages are, as the court of appeals had said, they -- they don't contradict her. They just make clear something that she was unclear about.

So for those reasons I'd ask the Court to find that while a different outcome may have been possible, it is not probable.

THE COURT: All right. Well, honestly speaking, as you may recall, for the first time in my entire career I ordered a new trial in this case. It's nothing that I have ever even done before. I didn't even really know how to do it apparently according to our illustrious court of appeals, who wants us to put everything on the head of a pin and make sure it fits in all these little places.

Here is what I can tell you right now is that this was a one-on-one case as he pointed out. One-on-one where the credibility of the victim was clearly in controversy. The credibility of this gentleman here was. The credibility of his wife on his behalf was.

And I think that what I saw here, first of all, I saw a police officer, where I should have probably ordered a new trial, when she turned to the jury in the course of this case and told the jury while I am talking to the lawyers, well, I know he is guilty. That's not doing justice in our society. When you have police officers who materially adopt their roles, then it's time for them to be doing some other job at the police department. But to sit there and say that on a case like this where it's really a one-on-one kind of thing absolutely amazed me. And I guess I was, you know --

1 frankly, maybe I should have done something different then,
2 but I didn't. I just told the jury, don't listen to that, and
3 that's not relevant, but it really demonstrated to me the
4 lengths that people will sometimes go to justify their
5 positions, particularly when I had this motion for new trial.
6         This information came to light to this officer after
7 the preliminary hearing where she was obviously, in my view,
8 looking for something to buttress the testimony of the victim.
9 And if she could demonstrate where this girl went home sick
10 after texting with her mother, it would certainly make it look
11 a lot better because the records did not show this girl having
12 any absences whatsoever when she claimed that this happened
13 while she was home, while she was home sick when she didn't --
14 or either didn't go to school or came home. And the mother
15 even got up and says, this never happened. So those records
16 would have been material, and these were not disclosed to the
17 Defense. That's why I ordered a new trial. And I think that
18 where you have a one-on-one -- now, if there were 40 other
19 witnesses that saw this, or three people -- I had a case
20 recently where they actually tape-recorded the crime. That
21 was awful. Yeah. I know. Ms. Johnson, were you on that?
22         MS. JOHNSON: I was.
23         THE COURT: Yes. So you know what I mean.
24 But here we got a one-on-one, and I really do think, it
25 is my opinion that this evidence is not cumulative. It

11

1 is clearly on point and clearly there would have --
2 there would have been a probable -- probably different
3 result on retry on this case if that evidence had come
4 to light and the witness could have been examined on it.
5 So I do find, as the Supreme Court has ordered me to,
6 that I found that, and I order a new trial. Prepare an
7 order.
8         MR. GRABEL: I did, Your Honor. I have a
9 copy.
10         THE COURT: What? You thought -- how did you
11 know which way I was going to rule?
12         MR. GRABEL: I didn't, Your Honor. I prepared
13 alternatives.
14         THE COURT: Ms. Johnson does all the time,
15 too. Show her.
16         MR. GRABEL: I will, Your Honor. And I
17 certainly won't be presumptuous.
18         THE COURT: I got to tell you, I'll be happy
19 to retry this.
20         Did you have to bring your assistant again?
21         MS. GALLAGHER: No.
22         MR. GRABEL: May I approach, Your Honor.
23         THE COURT: Yes.
24         MR. GRABEL: Thank you.
25         THE COURT: All right.

12

1 (Whereupon, Motion for New Trial concluded at 3:29 p.m.)

13

STATE OF MICHIGAN )
                 )ss
COUNTY OF INGHAM )

I, Paul G. Brandell, Certified Shorthand Reporter, do hereby certify that the foregoing Motion for New Trial was taken before me at the time and place hereinbefore set forth.

I further certify that the foregoing is a full, true, and correct transcript of the statements taken on August 16, 2017.

9-4-18        Paul G. Brandell, CSR-4552
              Certified Shorthand Reporter,
              Registered Professional Reporter

14